F I L E D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR - 3 2008
Apr 3, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Blackwing Bison Meats, Inc. and )
Blackwing Ostrich Meats, Inc., )
Illinois Corporations )
 )
      Plaintiff )
 )
 )
      v. )
 )
 )
UNION OF ORTHODOX JEWISH )
CONGREGATIONS OF AMERICA )
 )
      Defendant )

**08CV1908**
**JUDGE NORGLE**
**MAG.JUDGE COLE**

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Blackwing Bison Meats, Inc. (Blackwing Bison) and Plaintiff Blackwing

Ostrich Meats, Inc. (Blackwing Ostrich) file this action against the Union of Orthodox Jewish

Congregations of America ("Orthodox Union") seeking a Declaration that neither Blackwing

Bison nor Blackwing Ostrich has infringed on the Federally registered trademark of the Union,

neither Blackwing Bison nor Blackwing Ostrich have engaged in unfair competition or deceptive

trade practices or otherwise used the Union's trademark on any good packaged for Blackwing

Bison or sold by Blackwing Ostrich.

In support thereof the Plaintiff states as follows:

## PARTIES

1. Plaintiff Blackwing Bison Meats, Inc. (Blackwing Bison) is an Illinois Corporation in

good standing with its principal place of business in Antioch, Illinois.

2. Plaintiff Blackwing Ostrich Meats, Inc. is an Illinois Corporation in good standing

1

with its principal place of business in Antioch, Illinois.

3. Blackwing Bison and Blackwing Ostrich are collectively referred to hereinafter as Blackwing.

4. Defendant Union of Orthodox Jewish Congregations of America ("Union") is a New York State not-for-profit corporation with its principal place of business at 11 Broadway, New York, NY 10004.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the action under the provisions of 15 U.S.C. §1121 and pursuant to the Declaratory Judgment Act, 28 U.S.C 2201(a).

6. Venue is proper in this Court because the defendant regularly conducts business in Illinois and all acts relevant to this dispute took place in Illinois.

## MATERIAL FACTS

7. Blackwing purchases and re-sells meat and poultry products that Blackwing obtains from third parties.

8. Blackwing does not slaughter meat or poultry. It does not process slaughtered meat or poultry and it does not package slaughtered meat or poultry products.

9. Blackwing never applied the defendant's Federally-registered trademark to any goods that Blackwing has sold in interstate commerce.

10. The defendant licenses the use of its Federally-registered trademark, ("OU") Registrations Nos. 636,593 and 1,087,891, to third parties who slaughter and otherwise process meat and/or poultry according to rabbinical law as set forth by the Orthodox Union, who then

2

package the slaughtered meat and/or poultry and who are authorized by the defendant to affix the defendant's mark ("OU") to the packaging for the kosher products. A copy of the '891 registration certificate and which depicts the "OU" mark is attached hereto as Plaintiff's Exhibit A.

11. The presence of the defendant's Federally-registered trademark on slaughtered meat and poultry indicates that such products are kosher and meet the express inspection and processing standards of the Orthodox Union.

12. On information and belief, employees and/or authorized agents of the defendant, regularly inspect meat and poultry processing facilities of both prospective trademark licensees and of existing trademark licensees in order to insure that such meat and poultry processing plants render meat and poultry as required by rabbinical law and/or the defendant's trademark license terms and conditions.

13. Blackwing has purchased and sold in interstate commerce, packaged meat and poultry products that were obtained by Blackwing from third parties and which bore the defendant's Federally registered mark indicating that such goods were kosher.

14. On information and belief, the defendant does not allow third parties to affix its Federally-registered trademark to any product unless such products are processed by said third parties according to rabbinical law and/or the defendant's license terms and conditions.

15. On information and belief, all of the products that Blackwing acquired from third parties and re-sold in interstate commerce, and which bore the defendant's Federally-registered trademark were products that were in fact kosher.

16. Blackwing has purchased and sold in interstate commerce, products that were, on

3

information and belief, packaged by Bridgewater Quality Meats, Inc. ("Bridwater") under the

Solomon brand name, and which bore the defendant's Federally-registered trademark and were

thereby certified as kosher products.

17. On information and belief, Bridgewater Quality Meats, Inc. is an authorized

trademark licensee of the defendant and, on information and belief, products that Bridgewater

sells are kosher.

18. Bridgewater Quality Meats and the Orthodox Union are the sole entities who have

had control over the processing and packaging of Solomon brand kosher bison.

19. Products that Blackwing acquired from Bridgewater Quality Meats parties bearing

the defendant's Federally-registered trademark were, on information and belief, processed

according to rabbinical law and as required by the defendant, in facilities that had been inspected

and certified by the defendant. Such products were therefore kosher.

20. Blackwing Ostrich indicates on its website that it is a reseller of kosher products,

including Solomon-brand bison, processed by Bridgewater Quality Meats as a trademark licensee

of the defendant.

21. Bridgewater Quality Meats products sold by Blackwing were marked with the

defendant's Federally-registered trademark.

22. Blackwing has never sold goods bearing the defendant's trademark that were not

acquired from an authorized trademark licensee of the defendant or which were not kosher.

23 Blackwing has never affixed the defendant's trademark to any goods that Blackwing

has sold in commerce or in interstate commerce.

24. On information and belief, Bridgewater Quality Meats has at all time been licensed

4

by the defendant to use and apply the defendant's Federally registered trademark to foods that have been processed using processes certified by the defendant, including meats that have been packaged and sold under the Solomon brand.

25. Blackwing Ostrich and Blackwing Bison have never sold or shipped any kosher product to New York.

26. The defendant Orthodox Union certifies foods throughout the United States as being kosher and fit for consumption by individuals seeking what is termed kosher foods.

27. Products that Blackwing has sold and which bore the defendant's Federally-registered trademark, were genuine kosher products because the products were, on information and belief, processed as required by rabbinical law, as required by the defendant's trademark license and the defendant's Federally-register trademark was applied to such goods by authorized trademark licensees of the defendant.

28. Blackwing has relied upon the Orthodox Union's authorized trademark licenses and the Orthodox Union's designated inspectors to provide strictly conforming kosher food product for resale.

## Threat of Suit

29. The defendant Orthodox Union is a certifying entity, which licenses the use of its Federally-registered trademark. (Registration Nos. 636,593 and 1,087,891.)

30 . Over the last several weeks, the defendant has accused Blackwing of selling meat and poultry products that bore the defendant's Federally-registered trademark on the packaging and has accused Blackwing of infringing the defendant's Federally-registered trademark.

31. Blackwing has not sold as kosher, products that were not processed by one of the

5

defendant's authorized trademark licensee and represented by the authorized trademark license to be strictly conforming kosher goods.

32. The defendant has made repeated threats to file suit against Blackwing Bison and Blackwing Ostrich for infringement of the defendant's Federally-registered trademark, trademark dilution, and unfair competition and has demanded payment.

33. The defendant prepared and delivered to Blackwing, a draft complaint, a copy of which is attached hereto as Plaintiff's Exhibit B - Draft Complaint of the Orthodox Union, as a threat of litigation and to extort payments from Blackwing. .

34. In response to the Orthodox Union's threat of suit, Blackwing Bison and Blackwing Ostrich permitted inspectors from the Orthodox Union to examine all storage freezers  in Antioch, Illinois and at Kenosha Cold Storage in Kenosha, WI.

35. The Orthodox Union's inspectors found all Solomon brand bison stored in Blackwing Bison and Blackwing Ostrich freezers to be authentic Solomon brand kosher bison.

36. Orthodox Union inspectors found that Solomon brand kosher bison packages in Blackwing Bison or Blackwing Ostrich freezers with the OU mark were indeed properly certified kosher product.

37. Notwithstanding the fact that the Orthodox Union's inspectors found only properly labeled Solomon brand OU certified bison in Blackwing Bison and Blackwing Ostrich storage freezer, the Orthodox Union has demanded:

> A.    Money damages for alleged unauthorized or wrongful use of the OU mark on non-kosher product;
>
> B.    Access to proprietary and confidential client lists.

6

### Relief Requested

Wherefore, the Plaintiffs pray for a Judgment Declaring that neither Blackwing Bison nor

Blackwing Ostrich have infringed the defendant's trade mark; that Blackwing has not diluted the

defendant's mark; that Blackwing has not engaged in unfair competition or otherwise performed

any wrongful act by the resale Solomon brand OU-certified meat or poultry or by the resale of

other goods that were acquired by the plaintiffs from a licensee of the defendant.

Respectfully,

Date: 4-3-08

Harold Saalfeld
Attorney for Plaintiffs

Harold M. Saalfeld
Attorney for Plaintiffs
ARDC # 6231257
25 N. County Street, Suite 2R
Waukegan, IL 60085
Tel:    847 249 7538
Fax:    847 406 5032 haroldsaalfeld@yahoo.com

Plaintiff's Exhibit A



**U.S. Cl.: A-B**

# United States Patent Office

**Reg. No. 1,087,891**
Registered Mar. 21, 1978

## CERTIFICATION MARK
### Principal Register



Union of Orthodox Jewish Congregations (New York
  corporation)
116 E. 27th St.
New York, N.Y.   10016

For: PACKAGING MATERIALS AND WRAPS;
BROILING AND BAKING PANS; FLAVORS, EX-
TRACTS AND FOOD COLORINGS; WINE, LI-
QUEURS, AND CORDIALS; NON-ALCOHOLIC BEV-
ERAGES; SPICES AND SEASONINGS; AND SOAPS,
in CLASS A.
First use in 1925; in commerce in 1925.

For: HOTEL, CAMP, RESTAURANT AND CATER-
ING SERVICES; FOOD SERVICES IN HOSPITALS
AND OTHER INSTITUTIONS AND FOR TRAVEL-
LERS ON AIRLINES, in CLASS B.
First use 1961; in commerce 1961.

The certification mark as used by persons authorized
by applicant certifies that the production of said goods
and that the rendering of said services has been super-
vised by the Rabbinical Supervisors of the applicant, under
the direction of Histadruth Horabonim De America-Rab-
binica Council of America, Inc.
Owner of Reg. No. 636,593.

Ser. No. 130,761, filed June 17, 1977.

HENRY KLEIN, Examiner

Plaintiff's Exhibit A

Plaintiff's Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNION OF ORTHODOX JEWISH
CONGREGATIONS OF AMERICA
11 Broadway
New York, New York 10004

                Plaintiff,

      v.

BLACKWING BISON MEATS, INC.
17618 W. Edwards Road
Antioch, Illinois 60002

     and

BLACKWING OSTRICH MEATS, INC.
17618 W. Edwards Road
Antioch, Illinois 60002

             Defendants.

CIVIL ACTION NO. _____

COMPLAINT
FOR DAMAGES AND
INJUNCTIVE RELIEF

Plaintiff Union of Orthodox Jewish Congregations of America (the "Orthodox Union") seeks injunctive and monetary relief against Defendant(s) Blackwing Bison Meats, Inc. and Blackwing Ostrich Meats, Inc., jointly and severally trading as "Blackwing, Inc." and "Blackwing Meats, Inc." (herein "Blackwing") for acts of trademark infringement, false designation of origin, dilution, unfair competition and deceptive trade practices, arising out of Blackwing's unauthorized use of the Orthodox Union's registered certification mark Ⓤ on Blackwing's products, marketing and advertising.  Plaintiff alleges as follows:

## PARTIES

1.      Plaintiff Orthodox Union is a New York State not-for-profit corporation, with its principal place of business at 11 Broadway, New York, New York, 10004.

A/72472767.2

Plaintiff's Exhibit B

Plaintiff's Exhibit B

2.     Defendant Blackwing Bison Meats, Inc. is an Illinois corporation in good standing, incorporated in October 2001, with its principal place of business in Antioch, Illinois.

3.     Defendant Blackwing Ostrich Meats, Inc. is an Illinois corporation in good standing, incorporated in July 1997, with its principal place of business in Antioch, Illinois.

4.     Both Blackwing Bison Meats, Inc. and Blackwing Ostrich Meats, Inc. trade under the names "Blackwing, Inc.," "Blackwing Meats, Inc.," and "Blackwing Quality Meats." Both have the same registered agent, the same business address, the same president and secretary, and the same Internet website. Both defendants are referred to collectively herein as "Blackwing."

5.     Blackwing is in the business of packaging non-kosher meat products, and distributing, marketing and selling both kosher and non-kosher meat products at wholesale and retail.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this dispute arises under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1338 (a) and (b), in that this dispute arises under the Lanham Act. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a)-(c) in that Blackwing is a corporate defendant subject to jurisdiction in this district, the injury to the Orthodox

-2-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

Union occurred in this district, and a substantial part of the events or omissions giving rise to the Orthodox Union's claims occurred in this district.

## BACKGROUND OF THE OU MARK

7.    The Orthodox Union provides kosher product certifications that are recognized and trusted throughout the world. The word "kosher" in Hebrew, means fit or proper, and is used to describe food items that are prepared in accordance with special Jewish dietary laws. The market for kosher foods is sizeable and reaches far beyond those who adhere to the Jewish faith. For example, many Seventh-day Adventists, vegetarians and health-conscious consumers purchase only kosher foods due to the high standards of quality under which they are produced and manufactured. Recently, the kosher consumer market was estimated to include more than 8.5 million consumers.

8.    Many foods can be kosher or not kosher depending on factors that would not be immediately apparent to consumers from ingredient labeling or other indicia, absent certification from the Orthodox Union. For example, the product may be made from kosher ingredients but processed on non-kosher equipment. Or the source of origin may render certain ingredients kosher or non-kosher.

9.    With respect to meats, kosher laws require particular safeguards and procedures in the slaughter, inspection, trimming, and preparation of the meat products, all of which must be maintained before the meat can be considered kosher. Thus, meat from two identical animals in the same herd, or even meat from different parts of the same animal, can be kosher or non-kosher depending on the meat processor's compliance with these kosher laws.

-3-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

10.    Due to the complexity of kosher laws, and the inability of consumers and other purchasers to determine whether a food product is kosher, consumers and other purchasers rely upon the certification of agencies like the Orthodox Union, which provide kosher supervision and guidance.

11.    The Orthodox Union is the sole and exclusive owner of the kosher certification mark below (the "OU mark"):



12.    Since at least 1925, the OU mark has been used on hundreds of thousands of food and food-related products as an indicator that such products have been certified as kosher by the Orthodox Union. The Orthodox Union has spent considerable money, time and energy promoting its certification services and its OU mark. The OU mark is the central feature of the Orthodox Union's promotional efforts and has received extensive coverage in print and on television and radio, in religious and dietary-conscious media sources, and also in the general interest media.

13.    The OU mark has achieved a high degree of consumer recognition and has become famous as the most widely recognized indicator of kosher foods throughout the world. Today, the OU mark appears on labels in every aisle of the supermarket, from Oreo® cookies to Coca-Cola®, Bumble Bee® tuna to Dreyer's Grand® ice cream.

14.    The OU mark is federally registered, Registration Nos. 636,593 and 1,087,891, and has become incontestable. True and correct copies of the Certificates of Registration for the OU mark are attached hereto as Exhibit A.

-4-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

15. The OU mark is used to indicate supervision by or affiliation with the Orthodox Union, and is specifically used to indicate that a labeled product has been certified by the Orthodox Union as meeting the Orthodox Union's high standards. The OU mark is used in connection with, *inter alia*, food and beverage items, spices and seasonings, other consumables (oils, cooking sprays, additives, preservatives), food preparation materials, and services associated with foods and food preparation.

16. For many consumers, the OU mark is synonymous with the Orthodox Union and its certification activities.

17. Accordingly, the Orthodox Union vigilantly monitors the authorized and unauthorized use of the OU mark in commerce, in connection with food products and other products and services.

## BLACKWING'S DISTRIBUTION OF KOSHER AND NON-KOSHER BUFFALO

18. Blackwing packages and distributes meat products including bison or buffalo through retail, wholesale and food service channels nationwide. (The term "buffalo" herein refers to meat from American Bison.)

19. For at least five years Blackwing has been selling kosher and non-kosher buffalo under the brand names "Solomon's" and "Blackwing." Only the Solomon's-branded buffalo was certified by the Orthodox Union as kosher.

20. The Solomon's-branded buffalo was at all relevant times packaged by a company known as Bridgewater Quality Meats ("Bridgewater"), which is supervised by the Orthodox Union and separately authorized to use the OU mark on its Solomon's-branded buffalo products. Blackwing was a distributor, but not a packager, of Solomon's-branded buffalo products.

-5-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

21.    The Blackwing-branded buffalo was at all relevant times packaged by Blackwing itself. Bridgewater was not involved in the packaging of Blackwing-branded buffalo products.

22.    Blackwing-branded buffalo products are not now and have never been certified as kosher by the Orthodox Union, and Blackwing has never been permitted to use the OU mark in connection with its marketing of Blackwing-branded buffalo products.

23.    Blackwing and Bridgewater sold their buffalo products in the same standard proportions (*e.g.*, 4-oz. patties, 6-oz. filets, 8-oz. ground), and used similar exterior packaging for retail marketing. The two companies collaborated on printing and artwork as a cost-savings measure. A printout of Blackwing's Internet web page from 2003 showing the Blackwing-branded and Solomon's-branded buffalo products side-by-side is attached hereto as Exhibit B. Blackwing placed the order for both companies' boxes from the printing company that both used.

24.    The Orthodox Union objected to the similarity of the Blackwing and Bridgewater boxes in 2003, and demanded that the two companies distinguish their packaging. Thereafter, Blackwing continued to distribute Solomon's-branded (kosher) buffalo products.

25.    Blackwing's Internet web site shows the packaging currently in use for the Solomon's-branded (kosher) buffalo products that Blackwing distributes, and also the Blackwing-branded (non-kosher) buffalo products that Blackwing itself packages. The Solomon's-branded product is shown in boxes, while the Blackwing-branded product is

-6-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

shown on black Styrofoam cellophane-wrapped trays. A printout of Blackwing's web page including these images is attached at Exhibit C.

26.     In mid-2007, Blackwing notified a commercial customer of kosher buffalo products that Blackwing was no longer able to source Solomon's-branded kosher buffalo. In late January 2008, Blackwing notified the same commercial customer that Blackwing was again able to sell Solomon's-branded kosher buffalo.

## BLACKWING'S SUBSTITUTION OF NON-KOSHER BUFFALO FOR KOSHER BUFFALO

27.     As a condition of its kosher certification, the Orthodox Union requires that Solomon's include tamper-evident security measures in its retail packaging to assure the kosher status of Solomon's buffalo. Thus, inside the Solomon's-branded boxes of buffalo products (which indicate OU kosher certification on the outside), the OU-certified Solomon's buffalo meat is packaged in clear vacuum-sealed plastic pouches containing a tag <u>inside the plastic</u> indicating that the meat is kosher. A photograph of properly-packaged Solomon's buffalo is attached hereto as Exhibit D.

28.     In response to customer orders for kosher buffalo in February 2008, Blackwing sold boxes of ground buffalo product in exterior packaging that purported to contain Solomon's-branded kosher buffalo. A photograph of one such Solomon's box is attached hereto as Exhibit E.

29.     The meat that was inside these Solomon's-marked boxes, however, was not Solomon's-packaged buffalo in vacuum-packed clear plastic pouches with a kosher tag inside. Instead, Blackwing inserted its own ground buffalo product—not certified as kosher by the Orthodox Union—into the Solomon's boxes. The meat was packaged on the same black Styrofoam cellophane-wrapped trays that Blackwing uses for its

-7-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

Blackwing-branded (non-kosher) buffalo.  Photographs of the top and bottom of one such

cellophane-wrapped buffalo package are attached hereto as Exhibit F.

## BLACKWING'S ADMISSION OF IMPROPER USE

30.     In response to a consumer complaint, the Orthodox Union contacted

Blackwing on February 25, 2008.  The next day, Blackwing confirmed that the

mislabeled product did not originate with Bridgewater (the kosher-certified producer of

Solomon's-branded buffalo), and suggested that Blackwing or its co-packer had

packaged non-kosher meat in Solomon's-brand packaging.

31.     Mr. Gerber initially pledged to cooperate with the Orthodox Union's

efforts to investigate and cure Blackwing's infringement, including by providing access

to Blackwing's sales and inventory records, by sending e-mail notices to Blackwing's

kosher customers, and by posting a notice on Blackwing's web site alerting consumers to

the infringement.

32.     At the time, Blackwing indicated that it had only one customer who

purchased kosher buffalo.

33.     On February 27, 2008, the Orthodox Union posted a "Kashruth Alert" on

its own Internet web site, informing kosher consumers that Solomon's-branded ground

buffalo distributed by Blackwing may not be kosher.  In response, the Orthodox Union

learned of a second Blackwing customer.

34.     Blackwing thereafter confirmed that it had a second customer of kosher

buffalo products.

35.     On March 4, 2008, the Orthodox Union sent a letter to Roger Gerber of

Blackwing demanding that Blackwing remove from the marketplace any product bearing

an unauthorized OU mark, and taking or permitting specific curative actions including

-8-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

inspection by Orthodox Union of Blackwing's facility, and public notice from Blackwing to consumers of Blackwing's improper use of the OU mark on its products. A copy of the Orthodox Union's demand letter is attached hereto as Exhibit G.

36.    Later that day, March 4, 2008, the Orthodox Union sent an inspector to Blackwing's facility, but was denied access to Blackwing's computer files.

37.    During the March 4 inspection, Mr. Gerber provided the Orthodox Union's representative a list of additional kosher product customers, but refused to permit access to Blackwing's sales and inventory systems.

38.    As of the date of this Complaint, Blackwing has not provided the Orthodox Union with access to Blackwing's sales and inventory records, and has not posted a notice on its web site advising consumers of the infringement.

39.    On March 5, 2008, the Orthodox Union again contacted Mr. Gerber at Blackwing, and asked Blackwing to pledge its cooperation with the Orthodox Union's efforts to contain and mitigate the effect of Blackwing's infringement and its distribution of non-kosher product with the OU mark. A copy of the Orthodox Union's March 5 letter is attached hereto as Exhibit H.

40.    In response, Blackwing now denies that it substituted its uncertified product for Solomon's, and refuses to identify any of its kosher customers or to produce confirmation that Blackwing has contacted all of its kosher customers regarding the infringement and distribution of improperly labeled bison product.

41.    Instead, Blackwing has posted the following disclaimer on its web site, which makes no reference to Blackwing's infringement or even the possibility that any putatively kosher product distributed by Blackwing may not be kosher:

-9-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

> We are presently using a new kosher facility to kill our Bison and no longer use Bridgewater or Solomon branded products. The new facility purchases the kosher fronts from us and processes under their kosher trade name. Blackwing is no longer offering Kosher meats for resale.

*See* Exhibit I, Blackwing web page.

42.    Notwithstanding this disclaimer, Blackwing still advertises Solomon's-branded kosher buffalo for sale on its web site, side-by-side with Blackwing-branded buffalo. *See* Exhibit C.

43.    Blackwing also still prominently displays the Orthodox Union's OU mark on this and other web pages, in an orientation that deliberately and deceptively represents that the products shown—including Blackwing-branded buffalo—are certified by the Orthodox Union as kosher. Blackwing's representation is demonstrably, and knowingly, false.

44.    Blackwing admits that it is not authorized to use the OU mark in connection with Blackwing-branded buffalo products. Nonetheless, Blackwing uses the OU mark to advertise and sell its Blackwing-branded retail products, and to advertise its kosher buffalo business generally. *See* Exhibit C (retail products); Exhibit J (Blackwing itself).

45.    The OU mark used repeatedly by Blackwing on its web site, and used by Blackwing on the Solomon's-braded buffalo packages that contained Blackwing buffalo meat, is identical in every respect to the Orthodox Union's registered OU mark.

## COUNT I

### False Designation of Origin, 15 U.S.C. § 1125(a)

46.    The Orthodox Union incorporates and realleges the allegations of Paragraphs 1 through 45 of this Complaint.

-10-

A/72472767.2

Plaintiff's Exhibit B

Plaintiff's Exhibit B

47.    Blackwing's unauthorized use in commerce of the Orthodox Union's OU mark in connection with the marketing and sale of its buffalo products constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact which has caused (and is likely to continue to cause) confusion, or to cause mistake, or to cause deception as to the affiliation, connection or association of Blackwing with the Orthodox Union, or as to the origin, sponsorship or approval by the Orthodox Union of Blackwing's products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.    Blackwing's conduct has injured the Orthodox Union, and has misled consumers and other customers or potential customers who rely on the Orthodox Union and the OU mark as an indicator that a merchant or a product which carries the OU mark has been supervised, endorsed, or approved by the Orthodox Union.

## COUNT II
### Federal Trademark Infringement

49.    The Orthodox Union incorporates and realleges the allegations in paragraphs 1-48 of this Complaint.

50.    Blackwing's unauthorized use in commerce of the Orthodox Union's OU mark in connection with the marketing and sale of Blackwing's products has caused and is likely to continue to cause confusion, or to cause mistake, or to cause deception as to the origin, sponsorship or approval of such goods by the Orthodox Union, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

51.    Blackwing's unauthorized use in commerce of the Orthodox Union's OU mark in connection with the marketing and sale of Blackwing's buffalo products was

-11-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

made by defendants with full knowledge that Blackwing was not authorized to use the OU mark.

52.    Since it was notified of its infringement, Blackwing has continued (without authorization) to use the OU mark in commerce. Therefore, Blackwing's conduct constitutes intentional and willful use of a counterfeit mark within the meaning of 15 U.S.C. §§ 1114, 1116, and 1117. Since being notified by the Orthodox Union of the infringing conduct, Blackwing has refused to post appropriate public notices on its web site, has refused to contact its customers of kosher products to notify them of the problems relating to bison distributed by Blackwing, and has refused to provide complete records access to the Orthodox Union so that Orthodox Union can determine and mitigate the effect of Blackwing's infringement.

53.    Blackwing's conduct has injured the Orthodox Union, consumers and other customers or potential customers who rely on the Orthodox Union and the OU mark as an indicator that a merchant or a product displaying the OU mark has been supervised, endorsed, or approved by the Orthodox Union.

### COUNT III

### Dilution of Famous Mark Under § 43(c) of Lanham Act, 15 U.S.C. § 1125(c)

54.    The Orthodox Union repeats and incorporates the allegations of Paragraphs 1 through 53 of this Complaint.

55.    The Orthodox Union's OU mark is a famous mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), in that the mark is distinctive, has been used for many years throughout the world and is widely recognized therein, has been widely

-12-

A/72472767.2

Plaintiff's Exhibit B

Plaintiff's Exhibit B

advertised and publicized, and has not been used by any person or entity other than the Orthodox Union or those authorized or licensed by the Orthodox Union.

56.    After the OU mark became famous, Blackwing began using the mark in a manner that causes dilution of the distinctive quality of the mark.

57.    Consumers and commercial purchasers familiar with the OU mark have recognized the OU mark in the marketing of Blackwing's buffalo products, and have questioned whether Blackwing or its products are affiliated with, certified by or endorsed by the Orthodox Union.

58.    Blackwing's conduct has caused injury to the Orthodox Union and to consumers and other purchasers or potential purchasers who associated the OU mark with Blackwing's products under the mistaken belief that those products are affiliated with, certified by, endorsed by, or manufactured under the supervision of the Orthodox Union.

## COUNT IV

### Common Law Unfair Competition and Trademark Infringement

59.    The Orthodox Union incorporates and realleges the allegations of Paragraphs 1 through 58 of this Complaint.

60.    By its wrongful actions as described above, Blackwing has violated and infringed the Orthodox Union's common law rights in its certification mark and have competed unfairly with the Orthodox Union under the common law of the State of New York.

61.    By passing off goods as being affiliated with or endorsed by the Orthodox Union, Blackwing's conduct is likely to deceive or confuse the consuming public, and thereby generate profits that, but for said deception, Blackwing would not have received.

-13-

A/72472767.2

Plaintiff's Exhibit B

Plaintiff's Exhibit B

62.    Blackwing's continuing distribution and sale of such products, and its refusal to take corrective action with respect to its ongoing infringing activity are willful, and have caused and will continue to cause immediate, substantial and irreparable injury to the Orthodox Union, including irreparable injury to the Orthodox Union's OU mark, its reputation and its goodwill.  In addition, Blackwing's infringing acts have caused the Orthodox Union to suffer damages.

WHEREFORE, the Orthodox Union respectfully requests that this Court:

(1)    Issue temporary, preliminary and permanent injunctions enjoining Blackwing from continued infringement of the OU mark and any and all unauthorized use of the OU mark, and directing Blackwing to take immediate corrective action to remove from the marketplace any signage, product tags, marketing or other indication of the OU mark on Blackwing products;

(2)    Order Blackwing to render an accounting to the Orthodox Union of all of Blackwing's marketing activities in connection with the OU mark;

(3)    Order Blackwing to render an accounting to the Orthodox Union of all sales, and profits gained from the sale of products, bearing or sold in connection with an unauthorized OU mark, including a complete list of customers who requested or purchased kosher product;

(4)    Order Blackwing to provide access to the Orthodox Union into Blackwing's inventory, receipts, purchase and shipping orders, and all other records necessary or

-14-

Plaintiff's Exhibit B

Plaintiff's Exhibit B

helpful to determining the distribution path of all products sold by Blackwing which were represented to be kosher;

(5)  Award damages to the Orthodox Union in an amount to be determined at trial;

(6)  Award damages to the Orthodox Union in an amount of three times the amount of the Orthodox Union's damages or Blackwing's profits, whichever is greater, pursuant to 15 U.S.C. § 1117 and/or award statutory damages to the Orthodox Union pursuant to 15 U.S.C. § 1117(c) for Blackwing's intentional and willful use of a counterfeit of the OU mark;

(7)  Award exemplary and punitive damages to the Orthodox Union in an amount to be determined at trial;

(8)  Declare this to be an "exceptional" case within the meaning of 15 U.S.C. § 1117(a), and award the Orthodox Union its costs and attorneys' fees incurred in connection with this action under 15 U.S.C. § 1117(a), and as otherwise permitted by law;

(9)  Award pre- and post-judgment interest to the Orthodox Union on all sums due from Blackwing; and

(10)  Award such other and further relief as the Court deems just and proper.

A/72472767.2

Plaintiff's Exhibit B

Plaintiff's Exhibit B

## DEMAND FOR TRIAL BY JURY

The Orthodox Union respectfully requests trial by jury on all claims so triable.

Dated: March __, 2008.

BINGHAM McCUTCHEN LLP



David J. Butler
Jason R. Scherr
david.butler@bingham.com
jr.scherr@bingham.com

2020 K Street, NW
Washington, DC 20006
Telephone:    202.373.6000
Facsimile:    202.373.6001

*Attorneys for Plaintiff Union of Orthodox Jewish Congregations of America*

-16-

A/72472767.2

Plaintiff's Exhibit B